IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JON S. STEIDL and<br>DENISE A. STEIDL,<br><br>                Plaintiffs,<br><br>        v.<br><br>BSI FINANCIAL SERVICES for<br>and on behalf of NEWBERRY<br>PLACE REO, III, LLC and<br>WELLS FARGO BANK, N.A.,<br><br>                Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | CIVIL ACTION NO. H-12-3324 |

## MEMORANDUM OPINION AND ORDER

Plaintiffs, Jon S. Steidl and Denise A. Steidl, bring this action against defendants, BSI Financial Services for and on behalf of Newberry Place REO, III, LLC ("BSI") and Wells Fargo Bank, N.A. ("Wells Fargo"), alleging claims for fraud, negligent misrepresentation, and promissory estoppel arising from Wells Fargo's failure to modify their mortgage. Pending before the court is Wells Fargo Bank, N.A.'s Second Motion to Dismiss for Failure to State a Claim (Docket Entry No. 10). For the reasons stated below the pending motion will be granted, the claims against Wells Fargo will be dismissed, and plaintiff will be ordered to file an amended complaint alleging facts capable of stating a claim against BSI.

## I.  Factual Allegations and Procedural History

Plaintiffs allege that they obtained a home mortgage loan from Wells Fargo on or about June 18, 2007, in the amount of $292,500.00 ("loan"), and that in 2009 they fell behind on their payments.

Plaintiffs allege that in July of 2009 they began working with Wells Fargo in an effort to obtain Wells Fargo's agreement to modify their mortgage.  When that effort failed, Wells Fargo sold the mortgage to BSI, which attempted to foreclose on the property.[1]

On September 12, 2012, plaintiffs filed suit against Wells Fargo and BSI in the 152nd District Court of Harris County, Texas. Wells Fargo removed the suit to this court (Docket Entry No. 1) with BSI's consent (Docket Entry No. 2).  Thereafter, Wells Fargo filed its first Motion to Dismiss for Failure to State a Claim (Docket Entry No. 4).  Plaintiffs responded with a request to replead (Docket Entry No. 6), which the court granted (Docket Entry No. 8), and on January 18, 2013, plaintiffs' filed Plaintiffs' Second Amended Petititon (Docket Entry No. 9) in which they have asserted common law claims for fraud, promissory estoppel, and negligent misrepresentation.  On February 1, 2013, Wells Fargo filed a second motion to dismiss,[2] to which plaintiffs have responded,[3] and Wells Fargo has replied.[4]

---

[1] Plaintiffs' Second Amended Original Petition, Application for Temporary Restraining Order and Temporary Injunction ("Plaintiffs' Second Amended Petition"), Docket Entry No. 9.

[2] Wells Fargo Bank, N.A.'s Second Motion to Dismiss for Failure to State a Claim ("Defendant's Second Motion to Dismiss"), Docket Entry No. 10.

[3] Steidls' Response to Motion to Dismiss for Failure to State a Claim ("Plaintiffs' Response"), Docket Entry No. 11.

[4] Wells Fargo Bank, N.A.'s Reply to Plaintiffs' Response to Wells Fargo Bank, N.A.'s Second Motion to Dismiss for Failure to State a Claim ("Defendant's Reply"), Docket Entry No. 12.

## II.   **Standard of Review**

Wells Fargo seeks dismissal of the plaintiffs' claims pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6).   Rule 9(b) requires claims for fraud to be stated with particularity.   See Fed. R. Civ. P. 9(b) ("In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity.").   A motion to dismiss pursuant to Rule 12(b)(6) tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001), cert. denied sub nom Cloud v. United States, 122 S.Ct. 2665 (2002).   The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.   Id.

> When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.

Swierkiewicz v. Sorema N.A., 122 S.Ct. 992, 997 (2002).   To avoid dismissal a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."   Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007).   Plausibility requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).   A claim has facial

-3-

plausibility when the plaintiff pleads facts that allow the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. The plausibility standard is not akin to a "probability requirement," but asks for more than a sheer possibility a defendant acted unlawfully. Id. "[D]ismissal is proper if the complaint lacks an allegation regarding a required element necessary to obtain relief." Torch Liquidating Trust ex rel. Bridge Associates L.L.C. v. Stockstill, 561 F.3d 377, 384 (5th Cir. 2009).

When considering a motion to dismiss courts generally are limited to the complaint and its proper attachments. Dorsey v. Portfolio Equities, Inc., 540 F.3d 333, 338 (5th Cir. 2008). However, courts may rely upon "documents incorporated into the complaint by reference." Id. (quoting Tellabs, Inc. v. Makor Issues & Rights, Ltd., 127 S.Ct. 2499, 2509 (2007)). Documents "attache[d] to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498-99 (5th Cir. 2000). When a party presents "matters outside the pleadings" with a Rule 12(b)(6) motion to dismiss, the court has discretion to accept or to exclude the evidence for purposes of the motion to dismiss. Isquith ex rel. Isquith v. Middle South Utilities, Inc., 847 F.2d 186, 194 n.3 (5th Cir. 1988). However, "[i]f . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be

treated as one for summary judgment under Rule 56[, and a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Wells Fargo has attached to its motion a copy of the Home Affordable Modification Program ("HAMP") Loan Trial Period document that Wells Fargo provided to the plaintiffs.[5] Because this document is referenced in both the Plaintiffs' Second Amended Petition and in Plaintiffs' Response to Well Fargo's motion to dismiss,[6] because this document is central to the plaintiffs' claims, and because plaintiffs have not objected to the court's consideration of this document, the court concludes that the HAMP Loan Trial Period document can be considered without converting Wells Fargo's motion to dismiss to a motion for summary judgment. See Collins, 224 F.3d at 499 (concluding that when a plaintiff's claim is based on a document, that document is central to the plaintiff's claim).

### III.  Analysis

Wells Fargo argues that plaintiffs' claims for fraud, promissory estoppel, and negligent misrepresentation are subject to dismissal because they are all barred by the statute of frauds and

---

[5]Document titled "Home Affordable Modification Program Loan Trial Period," Exhibit A to Defendant's Reply, Docket Entry No. 12.

[6]Plaintiffs' Response, Docket Entry No. 11, pp. 3 ¶ 7, 5 ¶ 12, 7 ¶ 17, 7-8 ¶ 20 (citing Plaintiffs' Second Amended Petition, Docket Entry No. 9, p. 3 ¶¶ 11-17, 20-26).

because plaintiffs have failed to allege facts capable of
establishing that they detrimentally relied on any of Wells Fargo's
alleged oral or written representations.[7]  Wells Fargo also argues
that plaintiffs claims' for fraud are subject to dismissal because
Wells Fargo had no duty to disclose information that plaintiffs
allege Wells Fargo fraudulently withheld, and because plaintiffs
have failed to plead fraud with particularity as required by Fed.
R. Civ. P. 9(b).[8]

## A.    Fraud

Plaintiffs allege that Wells Fargo committed fraud

> by intentionally providing bad information and bad
> documents to [them] at the inception and throughout their
> loan process. . . [T]he fraud the [plaintiffs] allege is
> the communications (and omissions) of Wells Fargo
> personnel once [they] had fallen behind in their
> payments.  Wells Fargo personnel made promises on
> multiple occasions that the [plaintiffs] could remedy the
> situation when, from Wells Fargo's actual actions, Wells
> Fargo had no intention to provide that relief.  The
> [plaintiffs] relied on those representations and then
> Wells Fargo told them that the terms had changed.  The
> new terms were onerous and intentionally unworkable.[9]

Wells Fargo argues that plaintiffs' fraud claims should be
dismissed under Rule 12(b)(6) because they are barred by the
statute of frauds, because plaintiffs "fail to allege that Wells

---

[7]Defendant's Second Motion to Dismiss, Docket Entry No. 10,
p. 6; Defendant's Reply, Docket Entry No. 12, pp. 5-7.

[8]Defendant's Second Motion to Dismiss, Docket Entry No. 10,
pp. 15-16.

[9]Plaintiffs' Second Amended Petition, Docket Entry No. 9,
pp. 7-8 ¶ 31.

Fargo owed them a duty, which is a prerequisite to liability for fraud by nondisclosure,"[10] and because plaintiffs did not detrimentally rely on any oral or written representation by Wells Fargo.[11] Wells Fargo also argues that plaintiffs' fraud claims are subject to dismissal for failure to plead fraud with particularity as required by Fed. R. Civ. P. 9(b).

    1.   <u>Applicable Law</u>

       (a)   Fraud

To state a claim for common law fraud under Texas law plaintiffs must allege:  (1) a material representation was made; (2) the representation was false; (3) when the speaker made the representation, he or she knew that it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) the speaker made the material representation with the intention that the other party act upon it; (5) the other party acted in reliance upon the material representation; and (6) the other party thereby suffered injury. <u>Trenholm v. Ratcliff</u>, 646 S.W.2d 927, 930 (Tex. 1983) (citing <u>Wilson v. Jones</u>, 45 S.W.2d 572, 574 (Tex. Comm. App. 1932)). A promise to do an act in the future is not actionable fraud unless it is "made with the intention, design, and purpose of deceiving, and with no intention of

---

    [10]Defendant's Second Motion to Dismiss, Docket Entry No. 10, p. 14.

    [11]<u>Id.</u> at 10-12.

-7-

performing the act." Spoljaric v. Percival Tours, Inc., 708 S.W.2d 432, 434 (Tex. 1986) (citing Stanfield v. O'Boyle, 462 S.W.2d 270, 272 (Tex. 1971)). "While a party's intent is determined at the time the party made the representation, it may be inferred from the party's subsequent acts after the representation is made." Id. (citing Chicago, T. & M.C. Ry. Co. v. Titterington, 19 S.W. 472, 474 (1892)). "Failure to perform, standing alone, is no evidence of the promissor's intent not to perform when the promise was made." Id. at 435.

"Courts in Texas have consistently held that fraud by nondisclosure or concealment requires proof of all of the elements of fraud by affirmative misrepresentation, including fraudulent intent, with the exception that the misrepresentation element can be proven by the nondisclosure or concealment of a material fact in light of a duty to disclose." United Teacher Associates Ins. Co. v. Union Labor Life Ins. Co., 414 F.3d 558, 567 (5th Cir. 2005). "As a general rule, a failure to disclose information does not constitute fraud unless there is a duty to disclose the information." Bradford v. Vento, 48 S.W.3d 749, 755 (Tex. 2001) (citing Insurance Co. of North America v. Morris, 981 S.W.2d 667, 674 (Tex. 1998)). "Thus, silence may be equivalent to a false representation only when the particular circumstances impose a duty on the party to speak and he deliberately remains silent." Id. "Generally, no duty of disclosure arises without evidence of a confidential or fiduciary relationship." Morris, 981 S.W.2d at

674.  See also United Teacher, 414 F.3d at 566 (noting in dicta
that some courts "have not gotten the message . . . that a duty to
disclose can[not] exist in Texas absent a confidential or fiduciary
relationship").  Texas law does not recognize a general duty of
disclosure between parties contemplating a contract.  See Jabri v.
Alsayyed, 145 S.W.3d 660, 670 (Tex. App. — Houston [14th Dist.]
2004, rehearing overruled) (citing Fleming v. Texas Coastal Bank of
Pasadena, 67 S.W.3d 459, 461 (Tex. App. — Houston [14th Dist.]
2002, pet. denied)).  See also Bradford, 48 S.W.3d at 755-56
(stating Texas Supreme Court has never recognized a general duty to
disclose information in an arm's-length business transaction).

          (b)  Statute of Frauds

     "The statute of frauds requires that certain specified classes
of contracts be in writing to be enforceable."  Federal Land Bank
Association of Tyler v. Sloane, 825 S.W.2d 439, 442 (Tex. 1991)
(citing Tex. Bus. & Com. Code § 26.01).  Section 26.02 of the Texas
Business & Commerce Code states that "[a] loan agreement in which
the amount involved in the loan agreement exceeds $ 50,000 in value
is not enforceable unless the agreement is in writing and signed by
the  party  to  be  bound  or  by  that  party's  authorized
representative."  See BACM 2001-1 San Felipe Road Ltd. Partnership
v. Trafalgar Holdings I, Ltd., 218 S.W.3d 137, 144 (Tex. App. —
Houston [14th Dist.] 2007, pet denied) ("To satisfy the Statute of
Frauds, all loan agreements involving amounts exceeding $50,000

                          -9-

must be in writing."). When a modification encompasses or relates to a matter that must be in writing, except in certain limited circumstances not applicable here, the modification is not enforceable unless it, too, is in writing. Id. at 145-46 (citing Givens v. Dougherty, 671 S.W.2d 877, 878 (Tex. 1984)). See also Tex. Bus. & Com. Code § 26.02(a)(2) (stating that any promise, undertaking, commitment, or agreement where a financial institution loans, delays repayment, agrees to loan or delay repayment, or otherwise makes a financial accommodation to which the amount in question exceeds $50,000 must be in writing). See also Dracopoulas v. Rachal, 411 S.W.2d 719, 721 (Tex. 1967) (quoting Robertson v. Melton, 115 S.W.2d 624, 626-27 (Tex. Comm. App. 1938) ("Parties to a written contract that is within the provisions of the statute of frauds: . . . may not by mere oral agreement alter one or more of the terms thereof and thus make a new contract resting partly in writing and partly in parol, the reason for the rule being that, when such alteration is made, part of the contract has to be proven by parol evidence, and the contract is thus exposed to all the evils which the statute was intended to remedy.")).

    2.   <u>Application of the Law to the Alleged Facts</u>

        (a)  Plaintiffs' Fraud Claims Based on Oral and/or Written Representations Are Barred by Statute of Frauds

Plaintiffs allege that they obtained a home mortgage from Wells Fargo on or about June 18, 2007, in the amount of

$292,500.00.  The parties do not dispute that because the original loan was for more than $50,000.00 the original loan agreement was governed by § 26.02 of the Texas Business & Commerce Code and complied with the statute of frauds.  Because the original loan was for an amount that exceeded $50,000.00, any agreement to modify that loan must also be in writing.  See Trafalgar Holdings, 218 S.W.3d at 145-46; Givens, 671 S.W.2d at 878; Dracopoulas, 411 S.W.2d at 721.  Thus, to the extent that the plaintiff's fraud claims are based on oral representations pursuant to which Wells Fargo allegedly agreed to modify their mortgage, their fraud claims are barred by the statute of frauds.  See Deuley v. Chase Home Finance LLC, No. H-05-04253, 2006 WL 1155230, *3 (S.D. Tex. April 26, 2006).

Plaintiffs argue that their fraud claims are not barred by the statute of frauds because "primary reliance is on the written Home Affordable Modification Program agreement."[12]  When a defendant breaches an alleged written agreement the conduct alleged ordinarily only subjects the defendant to liability in contract, not in tort.  Southwestern Bell Telephone Co. v. DeLanney, 809 S.W.2d 493, 494 (Tex. 1991).  Although plaintiffs' fraud claims are couched in tort terms, plaintiffs are complaining that Wells Fargo breached an alleged written agreement to modify their loan contained in the HAMP Trial Loan Period document.  In addition to being in writing, an enforceable loan agreement involving an amount

---

[12]Plaintiffs' Response, Docket Entry No. 11, p. 8 ¶ 20.

that exceeds $50,000.00 in value must also be signed by the party
to be bound or by that party's authorized representative.   Tex.
Bus. & Comm. Code § 26.02(b).  Plaintiffs have not alleged that the
HAMP Loan Trial Period document was signed by a representative of
Wells Fargo, and the document attached to Defendant's Reply is not
signed by a Wells Fargo representative.   Accordingly, plaintiffs
have failed to alleged facts capable of establishing that the HAMP
Loan Trial Period document constitutes a written agreement to
modify their mortgage that is not barred by the statute of frauds.
Plaintiffs' fraud claims based on written representations contained
in the HAMP Loan Trial Period document are therefore barred by the
statute of frauds.

> (b)   Plaintiffs' Fraud Claims Based on Non-Disclosure
> Are Subject to Dismissal for Failure to Allege
> Facts Showing Duty to Disclose

In addition to their allegations that Wells Fargo committed
fraud through oral and written representations agreeing to modify
their mortgage, plaintiffs allege

> that Wells Fargo committed fraud through non-disclosure
> . . . The problem ran deep as the [plaintiffs] questioned
> how they defaulted on the loan itself, and Wells Fargo
> could not answer even that basic question for several
> months, but yet penalized the [plaintiffs] for the errors
> and omissions of Wells Fargo.   On several occasions,
> Wells Fargo personnel told the [plaintiffs] that they had
> been approved when, in fact, there were additional
> requirements that Wells Fargo sought to add without the
> [plaintiffs'] knowledge or approval after a time when the
> [plaintiffs] and Wells Fargo had reached an agreement.[13]

---

[13]Plaintiffs' Second Amended Petition, Docket Entry No. 9,
pp. 8-9 ¶ 32.

Plaintiffs argue that their claims for fraudulent non-disclosure are not subject to dismissal because they

> have alleged that Wells Fargo failed to disclose the true prerequisites for obtaining a loan modification. The [plaintiffs] had pre-qualified for a loan modification. Amended Complaint at ¶ 11. The written terms of the Home Affordable Modification Program stated that "If I am in compliance with this Loan Trial Period and my representations in Section 1 continue to be true in all material respects, then the lender will provide me [the plaintiffs] with a Loan Modification Agreement." The [plaintiffs] satisfied every requirement. They made timely monthly payments per the requirements of the program. *Id.* at ¶ 11.
>
> Yet, Wells Fargo denied the [plaintiffs] a loan modification on at least four separate occasions, citing cash reserves (once) and the existence of additional liens on the house (thrice). *Id.* at ¶¶ 12, 17, 22, 23. Each time, the [plaintiffs] provided Wells Fargo with the proper documentation to disprove the alleged material fact. Even though the [plaintiffs] abided by the terms of the Home Affordable Modification Program, Wells Fargo denied modification despite prior promises to the contrary. *Id.* . . .
>
> . . . [T]he [plaintiffs] had no way of discovering the true prerequisites of obtaining a loan modification other than the representations made by Defendant. The [plaintiffs] did not have an opportunity to discover the truth. Wells Fargo induced the [plaintiffs] to believe they were under consideration for a loan modification, and, as a result, Wells Fargo personnel were able to extract extra charges and penalties from the [plaintiffs]. *Id.* at ¶¶ 12-23. Simply, Wells Fargo had a financial incentive to delay the [plaintiffs], and from the subsequent communications from Wells Fargo, they achieved their goals. As a result of reliance on the terms of the Home Affordable Modification Program and the representations of Wells Fargo agents, the [plaintiffs] fell further behind in their payments. As such, the [plaintiffs] have suffered damage as a result of Wells Fargo's actions.[14]

---

[14]Plaintiffs' Response, Docket Entry No. 11, pp. 3-4 ¶¶ 7-9.

Plaintiffs complain that Wells Fargo fraudulently "failed to disclose the true prerequisites for obtaining a loan modification,"[15] but plaintiffs have neither alleged nor argued in response to Wells Fargo's motion to dismiss that Wells Fargo owed them a duty to disclose the true prerequisites for obtaining a loan modification.  Accordingly, the court concludes that plaintiffs' claims for fraudulent nondisclosure are subject to dismissal for failure to allege facts capable of establishing that Wells Fargo owed them a duty to disclose the true prerequisites for obtaining a loan modification.  See Bradford, 48 S.W.3d at 755-56 (Texas Supreme Court has never recognized a general duty to disclose information in an arm's-length business transaction). See also Bittinger v. Wells Fargo Bank N.A., 744 F.Supp.2d 619, 630 (S.D. Tex. 2010) (concluding that fraud claims were subject to dismissal because plaintiff "alleged no facts establishing . . . a duty to disclose on the part of the defendants").

> (c)  Plaintiffs' Fraud Claims Are Subject to Dismissal for Failure to Allege Facts Showing Detrimental Reliance

Plaintiffs' fraud claims are also subject to dismissal because plaintiffs have failed to allege facts capable of establishing that they acted or refrained from acting in reliance on any of Wells Fargo's allegedly fraudulent representations, or that any such

---

[15]Id. at 3 ¶ 7 (citing Plaintiffs' Second Amended Petition, Docket Entry No. 9, p. 3 ¶ 11).

-14-

action or inaction caused them injury.  Reliance is a necessary element of fraud.  "A plaintiff establishes reliance by showing the defendant's acts and representations induced him to either act or refrain from acting, to his detriment."  <u>Worldwide Asset Purchasing, L.L.C. v. Rent-A-Center East, Inc.</u>, 290 S.W.3d 554, 566 (Tex. App. — Dallas 2009, no pet.).  <u>See also</u> <u>Bohnsack v. Varco, L.P.</u>, 668 F.3d 262, 274 (5th Cir. 2012) ("[F]raud does not exist unless the defendant's representations induced the plaintiff to take a particular course of action.  It is not necessary that the representations were the sole inducement, but the representations relied upon must have been a material factor in inducing the plaintiff's action.").

Although plaintiffs allege that Wells Fargo's representations caused them to suffer extra charges and penalties that caused them to fall further behind on their payments, as a prerequisite for entering the HAMP Loan Trial Period, plaintiffs certified that they were unable to continue making their monthly payments.[16]  Plaintiffs have not alleged any facts capable of establishing that the extra charges and penalties they incurred that caused them to fall

---

[16]HAMP Loan Trial Period, Exhibit A to Defendant's Reply, Docket Entry No. 12, ¶ 1 ("**My Representations.**  I certify, represent to Lender and agree: (A) I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit and as a result, (i) I am either in default or believe I will be in default under the Loan Documents in the near future, and (ii) I do not have access to sufficient liquid assets to make the monthly mortgage payments now or in the near future.").

further behind in their payments resulted from their reliance on Wells Fargo's allegedly fraudulent representations instead of from their inability to make their mortgage payments.   The court therefore concludes that plaintiffs' fraud claims fail for failure to allege facts capable of establishing detrimental reliance.  See Pennington v. HSBC Bank USA, N.A., 2012 WL 4513333, *5 (5th Cir. October 3, 2012) (observing that bank's promise to modify plaintiffs' mortgage could not have caused plaintiffs who were unable to make their mortgage payments to fall further behind on their payments).

> (d)   Plaintiffs' Fraud Claims Are Subject to Dismissal for Failure to Satisfy Rule 9(b)'s Pleading Requirements

Fed. R. Civ. P. 9(b) requires claims for fraud to be stated with particularity.  Pleading fraud with particularity requires "[a]t a minimum . . . the particulars of time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what [that person] obtained thereby."  Benchmark Electronics, Inc. v. J.M. Huber Corp., 343 F.3d 719, 724 (5th Cir.), modified on denial of rehearing on other grounds, 355 F.3d 356 (5th Cir. 2003) (quoting Tel-Phonic Services, Inc. v. TBS International, Inc., 975 F.2d 1134, 1139 (5th Cir. 1992)).  "A dismissal for failure to plead fraud with particularity as required by Rule 9(b) is a dismissal on the pleadings for failure to state a claim."  Southland Securities Corp. v. INSpire

-16-

Ins. Solutions, Inc., 365 F.3d 353, 361 (5th Cir. 2004) (citing
Shushany v. Allwaste, Inc., 992 F.2d 517, 520 (5th Cir. 1993)).
Plaintiffs do not dispute that the allegations of fraud contained
in their Second Amended Petition fail to satisfy Rule 9(b)'s
heightened pleading requirements by pleading the particulars of
time, place, and contents of the false representations, as well as
the identity of the person making the misrepresentation and what
that person obtained thereby.  For example, although plaintiffs
contend that their reliance on Wells Fargo's allegedly fraudulent
representations allowed Wells Fargo to extract extra charges and
penalties from them, plaintiffs fail to allege facts showing how,
when, or why these extra charges and penalties were assessed, or
how they differed from charges and penalties incurred as a result
of not having made timely mortgage payments.  Plaintiffs' fraud
claims are subject to dismissal for failing to satisfy Rule 9(b).

**B.    Promissory Estoppel**

>      Plaintiffs allege that

>      Wells Fargo promised to modify [their] loan, and Wells
>      Fargo foresaw that [they] would rely on this promise.  As
>      a result of their reliance on Wells Fargo's promise, the
>      [plaintiffs] fell further behind on their payments.
>      Injustice can only be avoided by legal[ly] enforcing the
>      loan modification promised to the [plaintiffs].[17]

Wells Fargo argues that the plaintiffs cannot state a claim
for promissory estoppel because like their fraud claims, this claim

---

[17]Plaintiffs' Second Amended Petition, Docket Entry No. 9,
p. 10 ¶ 36.

is barred by the statute of frauds.[18]  Alternatively, Wells Fargo
argues that if plaintiffs are basing their promissory estoppel
claims on their receipt of the HAMP Loan Trial Period document,
those claims are implausible on their face because that document
does not contain a promise to modify their loan.[19]

Citing paragraphs 20-26 of their Second Amended Petition,
plaintiffs respond that the allegations in their complaint support
their promissory estoppel claim because they allege that

> Wells Fargo personnel made a promise of a loan
> modification, through its Home Affordable Modification
> Program Agreement, and then promised that the
> [plaintiffs] would be entitled to a loan modification if
> they complied with the Agreement terms.  Wells Fargo
> personnel could foresee that the [plaintiffs] would rely
> on the promises they made through written and oral
> communications.  *See, e.g.*, Amended Complaint at ¶¶ 20-
> 26.  As set forth in their Amended Complaint, the
> [plaintiffs] spent several months contacting Wells Fargo
> and attempting to meet Wells Fargo's requirements for
> reinstatement, but the sands kept shifting under [them].
> *Id.*
>
> The [plaintiffs] relied on Wells Fargo's
> representations as they continually sought to comply with
> the terms of Home Affordable Modification Program, and
> correct Wells Fargo's inaccurate characterizations of
> [their] financial situation as cause for denying a loan
> modification, but, again, Wells Fargo changed the rules
> after [they] began to act in reliance.
>
> Here, justice may only be served by legally
> enforcing the terms of the loan modification as
> originally contemplated. . .[20]

---

[18]Defendant's Second Motion to Dismiss, Docket Entry No. 10,
pp. 9-10; Defendant's Reply, Docket Entry No. 12, pp. 5-7.

[19]Defendant's Reply, Docket Entry No. 12, pp. 2-5.

[20]Plaintiffs' Response, Docket Entry No. 11, p. 7 ¶¶ 17-19.

Texas courts have recognized promissory estoppel as an affirmative claim in certain limited circumstances:

> Where the promisee has failed to bind the promisor to a legally sufficient contract, but where the promisee has acted in reliance upon a promise to his detriment, the promisee is to be allowed to recover no more than reliance damages measured by the detriment sustained.

Wheeler v. White, 398 S.W.2d 93, 97 (Tex. 1985). To state a claim for promissory estoppel, plaintiffs must plead facts showing (1) a promise, (2) foreseeability by the promisor that plaintiffs would rely on the promise; and (3) substantial reliance by plaintiffs to their detriment. See Henry Schein, Inc. v. Stromboe, 102 S.W.3d 675, 686 n.25 (Tex. 2002) (citing English v. Fischer, 660 S.W.2d 521, 524 (Tex. 1983)). See also Allied Vista, Inc. v. Holt, 987 S.W.2d 138, 141 (Tex. App. — Houston [14th Dist.] 1999, pet. denied). "For promissory estoppel to create an exception to the statute of frauds, there must have been a promise to sign a written contract which had been prepared and which would satisfy the requirements of the statute of frauds." Beta Drilling, Inc. v. Durkee, 821 S.W.2d 739, 741 (Tex. App. — Houston [14th Dist.] 1992, writ denied) (citing Nagle v. Nagle, 633 S.W.2d 796, 800 (Tex. 1982), and Consolidated Petroleum Indus., Inc. v. Jacobs, 648 S.W.2d 363, 367 (Tex. App. — Eastland 1983, writ ref'd n.r.e.)). "A promise to prepare a written contract is not sufficient. The defendant must have promised to sign a particular agreement which was in writing at the time." Id. (citing Southmark Corp. v. Life Investors, Inc., 851 F.2d 763, 766 (5th Cir. 1988) (applying Texas

law)).  In <u>Southmark</u> the Fifth Circuit stated that it would follow
<u>Consolidated Petroleum</u> and held:

> [T]he defendant should ordinarily not be promissorily
> estopped from asserting a . . . statute of frauds defense
> unless there is proof that he at least expressly promised
> to sign documents that had already been prepared or whose
> wording had been agreed on and that satisfy the
> requirement[s] of [the statute of frauds].

<u>Southmark</u>, 851 F.2d at 769-70.

Although plaintiffs contend that Wells Fargo's reliance on the
statute of frauds is misplaced "given that their primary reliance
is on the written Home Affordable Modification Program agreement,"[21]
because plaintiffs have failed to allege that that document was
signed by Wells Fargo or by a representative of Wells Fargo, the
court has already concluded that the HAMP Loan Trial Period
document fails to satisfy the statute of frauds.  <u>See</u> § III.A.2(a),
above.  Moreover, plaintiffs have not alleged any facts capable of
establishing that Wells Fargo promised to sign a particular
existing written document that would satisfy the statute of frauds
as to the alleged promise to modify their mortgage.  In addition,
for the reasons explained in § III.A.2(c), above, the court has
already concluded that plaintiffs have failed to allege facts
sufficient to establish detrimental reliance.  <u>See</u> <u>Sandel v. ATP</u>
<u>Oil & Gas Corp.</u>, 243 S.W.3d 749, 753 (Tex. App. — Houston [14th
Dist.] 2007, no pet.) (explaining that detrimental reliance is a
necessary element of a promissory estoppel claim, and that to

---

[21]<u>Id.</u> at 8 ¶ 20.

satisfy this element plaintiffs must allege facts showing that they materially changed their position in reliance on the promise at issue).  See also Pennington v. HSBC Bank USA, N.A., 2012 WL 4513333, *5 (5th Cir. October 3, 2012) (dismissing promissory estoppel claim for failure to allege reliance damages).  Because plaintiffs have failed to allege either that Wells Fargo promised to sign an existing written document that would satisfy the statute of frauds as to its alleged promise to modify their mortgage, and have failed to allege facts showing that they relied on such a promise to their detriment, their claims for promissory estoppel will be dismissed.

## C.   Negligent Misrepresentation

Plaintiffs allege that

> Wells Fargo committed negligent misrepresentation by providing bad information on the necessary prerequisites for obtaining a loan modification. . . Wells Fargo provided information to the [plaintiffs] regarding the necessary prerequisites to qualify for a loan modification, even though they had no intention of providing a loan modification.  Wells Fargo did not exercise reasonable care or competence in communicating said information, the [plaintiffs] justifiably relied on Wells Fargo's information, and as a result of that reliance have fallen further behind in their payments.[22]

Wells Fargo argues that the plaintiffs cannot state a claim for negligent misrepresentation because like the plaintiffs' claims for fraud and promissory estoppel, their claims for negligent

---

[22]Plaintiffs' Second Amended Petition, Docket Entry No. 9, pp. 9-10 ¶ 34.

misrepresentation are barred by the statute of frauds and by their failure to plead facts capable of establishing detrimental reliance.

Plaintiffs respond that the allegations in their complaint support their negligent misrepresentation claim because

> Wells Fargo either miscommunicated or negligently communicated with [them] about the true state of affairs by (1) denying loan modification for various specious reasons, (2) requesting further information in contemplation of a loan modification, and (3) indicating that loan repayment was past due. *Id.* All three messages were sent at the same time. The totality of the communications prevented the [plaintiffs] from resolving any deficiencies, and made future compliance impossible.
>
> Wells Fargo's actions sought to change the rules on the [plaintiffs] at every turn and were aimed at ensuring that the [plaintiffs] could not fix their issues. The [plaintiffs] relied on the representations of agents and the Home Affordable Modification Agreement that they would be approved given the aforementioned prerequisites. As a result of their reliance, the [plaintiffs] fell further behind in mortgage payments. As such, the [plaintiffs] have suffered damage as a result of Wells Fargo's actions.[23]

To state a claim for negligent misrepresentation, plaintiffs must plead facts showing (1) the representation is made by a defendant in the course of his business, or in a transaction in which he has a pecuniary interest; (2) the defendant supplies false information for the guidance of others in their business; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffers pecuniary loss by justifiably relying on the

---

[23]Plaintiffs' Response, Docket Entry No. 11, pp. 5-6 ¶¶ 13-14.

representation.  See Sloan, 825 S.W.2d at 442.  The sort of false
information contemplated in a negligent misrepresentation case is
a misstatement of existing fact, not a promise of future conduct.
Allied Vista, 987 S.W.2d at 141.  See also Airborne Freight Corp.,
Inc. v. C.R. Lee Enterprises, Inc., 847 S.W.2d 289, 298 (Tex. App.
— El Paso 1992, writ denied) (holding that a conditional promise of
future employment was insufficient as a matter of law to establish
negligent misrepresentation).

     A  negligent  misrepresentation  claim  may  fall  outside  the
statute of frauds if the premise of the claim is that, although an
agreement was never made, the defendant negligently misrepresented
that an agreement had been made and plaintiffs reasonably relied on
that misrepresentation to their detriment.  See Sloane, 825 S.W.2d
at 442 ("The Sloanes do not claim that the bank agreed to loan them
money and then breached that agreement; rather, they claim that the
bank  did  not  agree  to  loan  them  money,  yet  negligently
misrepresented that it had made such an agreement.").  Recovery
under this theory is limited to the pecuniary loss suffered in
reasonable reliance on the misrepresentation; lost profits or the
benefit of the bargain are not recoverable.  Id. at 443.

     Assuming without deciding that the plaintiffs have alleged
facts capable of establishing the first three elements of their
negligent misrepresentation claims, their claims are nevertheless
subject to dismissal because plaintiffs have not alleged facts
capable of establishing the fourth element, i.e., that they

-23-

suffered pecuniary loss by justifiably relying on Wells Fargo's representations regarding the necessary prerequisites to qualify for a loan modification. Plaintiffs have not alleged any acts or omissions that they did or refrained from doing as a result of Wells Fargo's allegedly negligent misrepresentations regarding the prerequisites to qualify for a loan modification. Nor have plaintiffs alleged facts capable of establishing that they suffered out-of-pocket damages as a result of having relied on Wells Fargo's allegedly negligent misrepresentations. Although plaintiffs allege that Wells Fargo's representations caused them to fall further behind on their payments, as a prerequisite for entering the HAMP Loan Trial Period, plaintiffs certified that they were unable to continue making their monthly payments.[24] Plaintiffs have not alleged any facts capable of establishing that their reliance on Wells Fargo's allegedly negligent misrepresentations regarding the prerequisites to qualify for a loan modification, and not their inability to make their mortgage payments, caused the damages they seek. Accordingly, plaintiffs' negligent misrepresentation claims are subject to dismissal because plaintiffs have failed to allege facts capable of establishing that they suffered out-of-pocket as

---

[24]HAMP Loan Trial Period, Exhibit A to Defendant's Reply, Docket Entry No. 12, ¶ 1 ("**My Representations.** I certify, represent to Lender and agree: (A) I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit and as a result, (i) I am either in default or believe I will be in default under the Loan Documents in the near future, and (ii) I do not have access to sufficient liquid assets to make the monthly mortgage payments now or in the near future.").

opposed to benefit-of-the-bargain damages.  See <u>Pennington</u>, 2012 WL 4513333, *5 (concluding on similar facts that "[a]ccrual of unpaid interest was a foregone conclusion, not a result of negligent misrepresentation").

## IV.  <u>Conclusion</u>

For the reasons explained above, the court concludes that plaintiffs have failed to state a claim against Wells Fargo that is plausible on its face for fraud, negligent misrepresentation, or promissory estoppel.  Accordingly, Wells Fargo Bank, N.A.'s Second Motion to Dismiss for Failure to State a Claim (Docket Entry No. 10) is **GRANTED**.  The style of the case also lists BSI as a defendant, but all of the plaintiffs' factual allegations concern actions by Wells Fargo.  Accordingly, plaintiffs are **ORDERED** to file an amended complaint against BSI within ten (10) days alleging facts capable of stating a claim for which relief may be granted against BSI, or the plaintiffs' claims asserted against BSI will be dismissed.

The April 5, 2013, initial pretrial and scheduling conference is **CANCELED**.

**SIGNED** at Houston, Texas, on this 26th day of March, 2013.

_____
SIM LAKE
UNITED STATES DISTRICT JUDGE